IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **IN THE MATTER OF THE TRACKING OF:**<br>**White 2024 Ford Transit Van,**<br>**New Hampshire License Plate Number 5361892,**<br>**VIN # 1FBVU4X89RKA30763**<br>**(TARGET VEHICLE 1)** | Case No. 25-mj-81-01-TSM<br><br>Filed Under Seal |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A TRACKING DEVICE
ON A VEHICLE PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 41 AND 18 U.S.C. § 3117**

I, Simon Kramer, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C § 3117 to extend the previous authorization of the installation and monitoring of a tracking device on a 2024 Ford Transit Van, White, Bearing New Hampshire License Plate Number 5361892, and VIN: 1FBVU4X89RKA30763 (hereafter "TARGET VEHICLE 1").   U.S. Magistrate Judge Andrea K. Johnstone granted the initial application for a tracking warrant (25-mj-47-01-AJ).   The previous tracking warrant is Exhibit 1 to this application.

2.       The TARGET VEHICLE 1 is registered to Can LI at 100 Wellington Circle, Lebanon, NH 03766. Based on the foregoing facts, I believe that the TARGET VEHICLE 1 is presently being used in furtherance of violations of 18 U.S.C. § 1952(a) (Use of Facilities of Interstate Commerce to promote, manage, establish, carry on a commercial sex enterprise), and that there is probable cause to believe that the installation and monitoring of a tracking device on the TARGET VEHICLE 1 will provide evidence, fruits, and instrumentalities of the aforementioned crimes as well as assist in the identification of persons who are engaged in the commission of those and related crimes.

3.      I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been a Special Agent with HSI since 2023, currently assigned to

Rouses Point, NY. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). As a U.S. Special Agent, your affiant is authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the use of Facilities of Interstate Commerce to promote, manage, establish, carry on a commercial sex enterprise, in violation of Title 18, United States Code, Section 1952(a).

4.     Your affiant has a Bachelor of Arts degree in the fields of Psychology and Criminal Justice from Rutgers, The State University of New Jersey in New Brunswick, NJ. Your affiant has completed approximately 960 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, encompassing both HSI Special Agent Training Program and Criminal Investigator Training Program. Your affiant has received training relating to the investigation of narcotics trafficking, firearms violations, money laundering, financial fraud, trafficking of counterfeit goods, human smuggling and trafficking, immigration and customs law, and other federal violations.

5.     Prior to your affiant's tenure as a Special Agent, your affiant has worked as a Federal Air Marshal for the Transportation Security Administration and a Federal Police Officer for the Pentagon Force Protection Agency. Part of your affiant's duties as a Federal Air Marshal included: enforce the statutes of Title 18 Criminal Law as well as Title 49 Transportation Law, participate in multi-agency operations to proactively combat terrorism and coordinate and administer law enforcement activities aboard US operated flights. As a Police Officer at Pentagon Force Protection Agency, your affiant's duties included: enforce the statutes of Title 18 Criminal Law as well as 32 CFR 234 Conduct on The Pentagon Reservation, operate as a Level 1 Civil Disturbance Officer; conduct Random Anti-Terrorism Measures; enforce local, state, and federal laws, as well as, DOD policy, procedures, and regulations; physically protect the grounds, personnel, visitors, and employee of the Pentagon Reservation; conduct access control screenings and contributed to protective services; and prepare reports for calls for service. Your affiant also has experience in conducting field interviews with both United States Citizens as well as suspected Foreign Nationals.

6.      The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

**PROBABLE CAUSE**

7.      Homeland Security Investigations (HSI) Rouses Point and HSI Burlington along with multiple federal, state, and local partners are investigating the activities of multiple Illicit Massage Businesses (IMBs) currently operating in the areas of Plattsburgh, NY, Colchester, VT, and Winooski, VT. In the course of this investigation, agents from HSI Rouses Point and HSI Burlington as well as task force officers, troopers, local police officers/detectives, and sheriff deputies have conducted suspect interviews, analyzed phone toll data, conducted vehicular and static surveillance, and conducted analysis of law enforcement records checks.

8.      On July 8, 2024, your affiant observed an advertisement on skipthegames.com for Tide Spa, located at 132 Irish Settlement Road B2, Plattsburgh, NY 12901. The advertisement was offering massage services and included images of Asian women in various stages of undress in sexually suggestive poses. Some of these descriptions in the advertisement described the masseuses as having breast sizes as "wow," "grooming down under" as "natural," piercings as "none," and tattoos as "none." The advertisement included descriptions such as, "we are cute and sexy Asian masseuses," "Asian beauties, private room," "we are sweet, warm, friendly, gentle, considerate, careful, and trustworthy," "soft skin, pretty face, natural perfect body."

9.      Initial surveillance of Tide Spa showed it is in Buckley's Plaza. Open-source record checks indicate that Tide Spa (NY DoS ID# 7282155) filed for incorporation on 03/18/2024 in Clinton County, NY with no owner or officers listed. Further open-source research identified Jing CHEN as the filer for Tide Spa.

10.     On July 24, 2024, your affiant received intelligence from law enforcement sources that Tide Spa Inc (Tide Spa) is one of at least three suspected IMBs in a network likely operated or facilitated

by CHEN. Since July 10, 2024, your affiant has noted an increasing number of advertisements for Tide Spa. These advertisements have been posted on websites, such as Rubmaps.ch, AdultLook.com, SkipTheGames.com, Escort Rush, and Xescort Hub. These websites are well known in the law enforcement community to advertise commercial sex/prostitution services.

11.    Open-source research previously associated the phone number (518) 310-9881 to Tide Spa. This same phone number ((518) 310-9881) is also listed on Rubmaps.ch in an advertisement for Yiren Spa LLC (Yiren Spa) located at 531 Main Street, Colchester, VT 05446. Rubmaps.ch is specifically a review site which caters to users looking for sexual services at IMBs. The Rubmaps.ch advertisement for Yiren Spa also lists another phone number, (929) 454-7763. This phone number is additionally associated with advertisements on skipthegames.com for Eva Spa 277 LLC (Eva Spa) located at 277 Pine Street, Suite B2, Burlington, VT 05401. The phone number (929) 454-7763 is included on several sexually suggestive advertisements on SkipTheGames.com for Eva Spa while also listing the address for Yiren Spa (531 Main Street, Colchester, VT 05446) in the same advertisement.

12.    Further investigation efforts revealed that CHEN also is the registered agent in corporate filings for both Yiren Spa and Eva Spa. Additionally, the email address, chenjing1989123@gmail.com, is used on corporate filings for both Eva Spa and Yiren Spa. It was revealed through law enforcement record checks that CHEN is associated with the address 277 Pine St Unit B2, Burlington, VT—the same address as Yiren Spa.

13.    Through surveillance efforts, HSI Rouses Point was able to observe CHEN's Black Mercedes SUV (NY #LCV4478) (TARGET VEHICLE 2) making trips from New York, NY to both Yiren Spa and Tide Spa. TARGET VEHICLE 2 has been observed via License Plate Reader (LPR) data driving north bound from New York, NY making frequent trips as well as at crossings between NY and VT. Additionally, TARGET VEHICLE 2 has been observed parked in front of Tide Spa and operated by a female identified as Juan ZHANG (DOB: ████). CHEN sponsored ZHANG for her Lawful Permanent Resident Card utilizing a Spousal Visa.

14.     HSI Rouses Point has continued to analyze intelligence received regarding CHEN and their associated suspected IMBs including Tide Spa and Yiren Spa. HSI Rouses Point was able to identify an additional IMB, Mosong Spa LLC, which recent surveillance suggests that it is not yet currently operational. Mosong Spa LLC was incorporated on April 25, 2024, by filings submitted to the Vermont Department of State by ZHANG.

15.     On September 15, 2024, at approximately 1907 hours, New York State Police (NYSP) Trooper Anthony Cumm encountered a woman working at Tide Spa (132 Irish Settlement Road, Unit B2, Plattsburgh, NY 12901). When Trooper Cumm asked if the female employee had ID on her; she replied, "I don't have, at home, my boss, my friends take…" The female employee then presented a picture of what appeared to be a United States Employment Authorization Card.

16.     During the encounter, NYSP Trooper Cumm was given consent to enter and look around Tide Spa. The following was observed from NYSP Trooper Cumm's body-worn camera:

a.  There was a front sitting room, a back room with a kitchenette, bathroom, and shower, and two massage rooms with doors on them.

b.  The first massage room had a large white male dressed only in black briefs (underwear), lying face down on a massage table. Additionally, there appeared to be a white in color small rectangular shaped bag/object on the ground that appeared to be tied up with a knot at one end, on top of a smaller round object that appeared to be in the shape of a ring. Additionally, there was ambient/dimmed lighting and a small table with what appeared to be plastic bottles.

c.  The other massage room appeared to have an empty massage table covered in what appeared to be a white and violet in color fabric in the center of the room. Additionally, there was ambient/dimmed lighting, and a small table with what appeared to be plastic bottles and a roll of paper towels on the table.

d.  In the back room, there appeared to be the following: a shower with towels hanging next to the shower, a bathroom, luggage, various paper products including paper towels, toilet paper,

tissues, and garbage bags. Additionally, there appeared to be multiple pieces of furniture including dressers, a kitchenette with various small appliances, and other various kitchen items.

e.   In the front room by the front door, there appeared to be a couch with a blanket and multiple pillows. The couch appeared to have a black and white striped sheet tucked in over the couch seat cushions. That striped sheet appeared to be underneath the blanket and pillows on top.

17.   On September 17, 2024, HSI Burlington and the Colchester Police Department (Colchester Police) conducted surveillance of Yiren Spa. Colchester Police advised HSI that earlier in the day, a black Mercedes was parked at Yiren Spa bearing New York license plate LCV4478 (TARGET VEHICLE 2). An unknown female was observed walking to and from TARGET VEHICLE 2 from inside of Yiren Spa, moving what appeared to be luggage and other belongings to the trunk of TARGET VEHICLE 2 from inside Yiren Spa. Colchester Police noted that a male appeared to be driving TARGET VEHICLE 2 and was identified as Kevin TOWNE. Colchester Police advised they had previously observed TARGET VEHICLE 2 at the spa on multiple occasions.

18.   On September 17, 2024, at approximately 17:30 hours, Colchester Police observed TARGET VEHICLE 2 arrive at Yiren Spa. Colchester Police reported that TOWNE was driving TARGET VEHICLE 2 and ZHANG was in the passenger seat. Another unknown woman was observed in the back seat of TARGET VEHICLE 2. A suitcase was removed from the trunk of TARGET VEHICLE 2 before the parties entered Yiren Spa. TARGET VEHICLE 2 remained parked in front of the Yiren Spa. At approximately 19:18 hours, a white Ford Transit Van with a New Hampshire license plate (TARGET VEHICLE 1) parked the driveway of Yiren Spa, the driver positioned TARGET VEHICLE 1 with the headlights pointing down the driveway towards Main Street. Investigators could see someone walking in front of the headlights back and forth at least 2-3 times. TARGET VEHICLE 1 remained in front of Yiren Spa briefly until at least two occupants entered TARGET VEHICLE 1. TARGET VEHICLE 1 left Yiren Spa and was surveilled as it traveled west on Main St. towards Route 7. The registration of TARGET VEHICLE 1 is NH 5361892. A law enforcement records check of a registration of NH 5361892 indicated that the 2024 white Ford Transit Van (TARGET VEHICLE 1) is registered to Can LI, of 100 Wellington

Circle, Lebanon, NH.  TARGET VEHICLE 2 was also observed leaving Yiren Spa and following TARGET VEHICLE 1 out of the driveway.  Investigators were able to continue to surveil TARGET VEHICLE 2 as it traveled Southbound on I-89 to I-189, eventually reaching 106 East Redrock Drive in Burlington, VT.  Investigators located TARGET VEHICLE 2 parked and unoccupied at this address in the driveway.

19.    On October 18, 2024, HSI Rouses Point conducted motor vehicle stops on subjects observed exiting Tide Spa. At approximately 14:45 hours a white male (the Subject) was seen parking at and then entering Tide Spa. HSI Rouses Point maintained surveillance on the Subject's vehicle. During surveillance, probable cause was observed by Clinton County Sheriff's Office (CCSO) Sergeant Deputy Rosoff to initiate a traffic stop. The Subject was identified as ██████████

    a.  During the encounter, ████████ consented to an interview with HSI Rouses Point SA Strachan and stated, "I went to get a massage and then she asked me if I want a happy ending." ████████ elaborated that the Tide Spa employee indicated sexual services by "making gestures with her hand." ████████ replied to the Tide Spa employee, "Is that okay?" and the Tide Spa employee stated, "Yes."

    b.  ████████ further claimed the Tide Spa employee spoke poor English. ████████ indicated that he heard about Tide Spa through a friend but did not remember which friend. Moreover, ████████ claimed that he sought massage services due to injuries and scheduled an appointment through skipthegames.com. ████████ claimed that he saw sexual services offered on skipthegames.com in addition to services for a "masseuse." When asked further about offering to get sexual services, ████████ claimed, "I didn't offer" and when asked again where he first heard about Tide Spa, ████████ claimed, "I forgot where I heard it" and "it was a long time ago." However, ████████ did claim the person mentioned skipthegames.com.  When questioned further about skipthegames.com, ████████ indicated that you "type in what you want" and that the website specifically mentions "escort" and "exotic massage." ████████ claimed he went to Montreal "years ago" for a "Nuru Massage"

where they "use their tits on you or something." When asked about his first time visiting Tide Spa, ████ initially claimed that he thought he first visited in May.

c.  Furthermore, ████ provided a phone number of (518) 310-9881 for Tide Spa. ████ claimed he had communicated with a Tide Spa employee via text messages and received a "heart emoji" from the phone number. ████ claimed he would use a phone number to call or text message to schedule appointments at the spa. ████ showed his text message exchange with Tide Spa to CCSO Sergeant Deputy Rosoff and SA Strachan. The text messages depicted a heart emoji, a picture of ████, and messages requesting ████ to return to Tide Spa. The first text with Tide Spa was on July 8, 2024.

d.  Additionally, ████ indicated that sometimes he would arrive at Tide Spa but was turned away by the employee claiming "she's busy" because somebody else is there. ████ claimed a massage is 45 to 50 minutes and costs about $80 in cash and that cards aren't accepted. Upon first arriving at Tide Spa, ████ would ring the doorbell, and an employee would bring him inside. ████ described the interior as being "real dark" with "Chinese music playing" and "electric heaters going." ████ further described the interior as having two small rooms to the right upon entry. Additionally, ████ claimed "it looks like she lives there," due to the presence of a couch containing pillows and blankets, and a kitchen towards the rear containing a microwave and refrigerator.

e.  ████ indicated that he takes his clothes off and lays down for a 45-to-50-minute massage with oil. Towards the end of the massage, ████ indicated that he was asked if he wanted a "happy ending." ████ claimed that he asked how much but the employee did not understand him. ████ claims he paid $140 USD total for the massage and "happy ending."

f.  Additionally, ████ first claimed that he had been to Tide Spa twice but, later clarified "maybe three times." The Subject also stated that he has seen two Asian females in Tide Spa.

g.  ████████ claimed that one of the female employees named "Emma" indicated that Tide Spa employees go back and forth between New York and Vermont and that females are swapped out every two weeks.

20.  On Tuesday, October 22, 2024, HSI Burlington and Colchester Police conducted joint surveillance of Yiren Spa.  At approximately 18:32 hours, Colchester Police reported that they observed who appeared to be ZHANG park TARGET VEHICLE 2 in the driveway of Yiren Spa and bring in items from TARGET VEHICLE 2's trunk into Yiren Spa.  At approximately 18:34 hours, investigators observed TARGET VEHICLE 1 park in the driveway of Yiren Spa.  ZHANG was observed putting items into the back of TARGET VEHICLE 1 and then a female exited Yiren Spa and entered TARGET VEHICLE 1.  TARGET VEHICLE 1 then left the area and headed towards I-89 Southbound.  At approximately 18:53 hours, TARGET VEHICLE 1 pulled into the McDonald's parking lot located at 1205 Williston Rd, South Burlington, VT.  An individual was observed getting into TARGET VEHICLE 1 at this location.  TARGET VEHICLE 1 then left the area and headed westbound on Williston Rd towards the interstate. After following TARGET VEHICLE 1, investigators observed TARGET VEHICLE 1 park at Cricket Wireless located at 1203 Williston Rd, South Burlington, VT and see two males get out and walk behind the Cricket Wireless.  Investigators surveilled TARGET VEHICLE 1 as it departed and traveled Southbound on I-89.

21.  Investigators continued to surveille TARGET VEHICLE 1 as it traveled Southbound on I-89 to Waterbury, VT. TARGET VEHICLE 1 exited the interstate via Exit 10 and began traveling towards the Town of Stowe, VT on Route 100 (Waterbury-Stowe Rd.).  TARGET VEHICLE 1 travelled a short distance from the exit and entered the parking lot of the Mobil Gas Station located at 758 Waterbury-Stowe Rd, Waterbury, VT.  TARGET VEHICLE 1 was observed pulling up to the gas pumps.  Investigators obtained and reviewed the video footage from the gas station and observed an unknown female waiting with luggage on the southern side of the main parking lot.  When TARGET VEHICLE 1 pulled up, the unknown female began walked towards TARGET VEHICLE 1 and loaded her luggage into the rear of TARGET VEHICLE 1.  The unknown female then entered TARGET VEHICLE 1 and waited while two males, one being the driver of TARGET VEHICLE 1, were outside walking around TARGET VEHICLE

1. The driver of TARGET VEHICLE 1 walked into the gas station. Surveillance footage from the interior of the gas station allowed investigators to identify the male driver of TARGET VEHICLE 1 as LI, the registered owner of TARGET VEHICLE 1.

22. Investigators continued to follow TARGET VEHICLE 1 South on I-89. TARGET VEHICLE 1 entered the State of New Hampshire and exited I-89 in New Hampshire at Exit 19, driving into Lebanon, NH. TARGET VEHICLE 1 drove to a Maplefield's gas station located at 260 Mechanic St, Lebanon, NH. TARGET VEHICLE 1 pulled up to the gas pumps at approximately 20:25 hours. The occupants of TARGET VEHICLE 1 were observed exiting and standing around TARGET VEHICLE 1. While TARGET VEHICLE 1 stopped at this Maplefield's, investigators observed two females exit TARGET VEHICLE 1 and enter the gas station for a brief period of time, before returning to TARGET VEHICLE 1. Once all of the occupants returned, TARGET VEHICLE 1 drove back North on I-89 then continued Southbound on I-91. At approximately 21:33 hours, TARGET VEHICLE 1 traveled past Exit 1 in Vermont and continued southbound into the State of Massachusetts.

23. Analysis of License Plate Reader (LPR) data shows TARGET VEHICLE 1 making frequent trips to the New York City Metropolitan Area. The in-depth analysis showed that TARGET VEHICLE 1 was purchased by LI on approximately February 23, 2024. Based on LPR analysis, TARGET VEHICLE 1 began making trips southbound towards the New York City Metropolitan Area on February 28, 2024; approximately three weeks before Tide Spa and Yiren Spa opened for business. Further analysis shows trips to the New York City Metropolitan Area taking place every month; sometimes multiple times a month and, in some cases, multiple times a week. These trips to the New York City Metropolitan Area number are estimated to be 51 trips between February 28, 2024, and February 15, 2025. Based on the surveillance conducted on TARGET VEHICLE 1 and from information gathered through enforcement actions of customers of Tide Spa previously referenced (Paragraph 19, Subsections a-g), it is suspected that LI is the primary transportation provider for the female employees. It is suspected that LI is explicitly using TARGET VEHICLE 1 to move the female employees between the Northern NY/VT areas and the New York City Metropolitan Area.

24.    On March 7, 2025, United States Magistrate Judge Honorable Andrea K. Johnstone authorized the installation of a GPS tracking device for 45 days on TARGET VEHICLE 1 used by LI. *See* case number 25-mj-47-01-AJ incorporated herein by reference and affidavit attached hereto as Exhibit 1. This warrant allows investigators to utilize the GPS tracking device until April 21, 2025. The GPS tracking device was installed on TARGET VEHICLE 1 on March 13, 2025, by HSI TFOs.

25.    Since the installation of the GPS tracking device, HSI Rouses Point, HSI Burlington, and HSI New York, along with multiple federal, state, and local partners have conducted numerous surveillance operations as well as gathered, researched, and analyzed intelligence through the monitoring of the GPS tracker device installed on TARGET VEHICLE 1.

26.    The information gathered through historical analysis of the GPS tracking device as well as physical surveillance on TARGET VEHICLE 1 shows a weekly pattern of travel that LI has consistently followed since the GPS tracker device's installation on March 13, 2025. TARGET VEHICLE 1 has consistently started on Sundays in Lebanon, NH at the residence of LI and traveled northbound on I-89 towards Burlington, VT. TARGET VEHICLE 1 would travel to multiple location in the Burlington, VT, Colchester, VT, and St. Albans, VT area through the later afternoon and evening. After the conclusion of TARGET VEHICLE 1's stops in the northwestern Vermont area, TARGET VEHICLE 1 would travel southbound on I-89 towards Lebanon, NH. At the interchange of I-89 and I-91, TARGET VEHICLE 1 would travel southbound on I-91 instead of continuing to LI's residence at 100 Wellington Circle, Lebanon, NH. TARGET VEHICLE 1 would continue south to either I-84 or 1-95 eventually making its way to the New York City Metropolitan area and ultimately New York City and some of its boroughs. The route of travel by TARGET VEHCILE 1 from the northwestern Vermont area to the New York City Metropolitan area followed a non-direct route by traveling southeast to the area of Lebanon, NH before continuing south on I-91. The following day, Mondays, TARGET VEHICLE 1 would return to the area of northwestern Vermont by following a similar route in reverse making its way eventually north on I-91 to Lebanon, NH, then continuing northbound on I-89 from the I-91 and I-89 interchange. This same pattern of travel would be repeated starting on Tuesdays and returning on Wednesdays from the New York City Metropolitan area.

27.     During this investigation and surveillance of TARGET VEHICLE 1, multiple residential properties and commercial businesses have been identified that are suspected of being involved with this investigation. Through the monitoring of real-time and historical GPS tracking data and physical surveillance by HSI Rouses Point, HSI Burlington, and HSI New York, along with multiple federal, state, and local partners the following addresses were identified as frequent locations that TARGET VEHICLE 1 would stop at during its consistent trips to and from the New York City Metropolitan area. During TARGET VEHICLE 1's trips to northwestern Vermont, it has visited the following businesses:

    a.    China Moon Buffet - 1400 US-302, Barre, VT 05641

    b.    China Moon - 96 Sykes Mountain Ave, White River Junction, VT 05001

    c.    JS Hot Stone Massage - 55 White St, South Burlington, VT 05403

    d.    Volcano Asian Cuisine - 1355 North Ave, Burlington, VT 05408

    e.    Asian Gourmet - 276 N Main St, Barre, VT 05641

    f.    China Express - 295 Shelburne Rd, Burlington, VT 05401

    g.    China Express 2 - 30 North St, Burlington, VT 05401

    h.    Ichiban Restaurant - 156 N Winooski Ave, Burlington, VT 05401

    i.    Asian Bistro - 121 Connor Way, Williston, VT 05495

28.     Through toll analysis, JS Hot Stone Massage has had contacts with both ZHANG and TOWNE. Additionally, TARGET VEHICLE 1 has made eight (8) stops at 8 Stebbins Street, St. Albans, VT 05478 and one (1) stop at 12 Stowell Street, St. Albans, VT 05478. Investigative efforts have identified 12 Stowell Street, St. Albans, VT 05478 as being owned by Deyong Li according to the County Assessor's Office. Deyong Li has previously been identified as the Owner of Lucky Buffet at 101 Lake St, St Albans, VT 05478. Lucky Buffet's address has been tied through business records to the now defunct Eva Spa 277 LLC which was registered to CHEN as the corporate filer.

29.     During a surveillance operation on April 6, 2025, through April 7, 2025, investigators were able to conduct surveillance on TARGET VEHICLE 1 in both the northwestern Vermont area as well as the New York City Metropolitan area. In the northwest Vermont area, investigators observed LI operating

TARGET VEHICLE 1 and stopping at Yiren Spa. At Yiren Spa, investigators saw LI exit the van and enter Yiren Spa. LI then exited Yiren Spa with an unknown female carrying what appeared to be a large object like a couch cushion. This object was lifted by LI and the unknown female and placed into the rear of the van via the rear cargo doors. The couch cushion was propped upright against the interior wall of the van. Investigators also witnessed a second smaller box loaded into the van. Following TARGET VEHICLE 1's departure from Yiren Spa, investigators continued surveilling TARGET VEHICLE 1 until it parked in the driveway of 8 Stebbins Street, St. Albans, VT. At 8 Stebbins Street, St. Albans, VT, investigators saw two males with dark colored backpacks enter TARGET VEHICLE 1, then TARGET VEHICLE 1 departed the area. While operating TARGET VEHICLE 1, LI drove south eventually arriving at Ichiban Restaurant (156 N Winooski Ave, Burlington, VT 05401). Investigators observed a male with what appeared to be a rolling carry-on style bag enter TARGET VEHICLE 1 before TARGET VEHICLE 1 departed the area.

30.     On April 6, 2025, throughout the surveillance operation, investigators monitored TARGET VEHICLE 1 via GPS tracking while supplementing with physical surveillance. After leaving the northwestern Vermont area, TARGET VEHICLE 1 traveled south on I-89 stopping in White River Junction, VT before continuing south on I-91. TARGET VEHICLE 1 continued south and stopped at approximately 23:48 hours at what appeared to be in the vicinity of Chinese Bodywork (91 Main Street #11, Greenfield, MA 01301), a suspected IMB.

31.     On April 7, 2025, and following TARGET VEHICLE 1's stop at Chinese Bodywork, TARGET VEHICLE 1 continued south eventually arriving in the New York City Metropolitan area and ultimately in Flushing, NY at approximately 02:30 hours. Between the hours of 02:30 hours and 03:29 hours, eight (8) males and four (4) females exited TARGET VEHICLE 1 across several boroughs of New York City including Manhattan, Brooklyn, and Queens. It is currently unknown at what point the additional occupants of TARGET VEHICLE 1 were picked up. During TARGET VEHICLE 1's stops in Flushing, it was observed by investigators that pieces of luggage, bags, a box, and what appeared to be a couch cushion unloaded into different vehicles and brought into different addresses. At 04:00 hours TARGET VEHICLE 1 parked near the intersection of 11th Avenue and 80th Street in Brooklyn, NY and LI was observed sitting

in TARGET VEHICLE 1 for approximately 47 minutes. At approximately 04:47 hours, investigators observe LI exit TARGET VEHICLE 1 and then ride a "hover board" from 80th Street to a residence at 67th Street. It is currently unknown why LI is parking 13 blocks away from where LI might be residing temporarily while in Brooklyn, NY.

32.    Specific information on TARGET VEHICLE 1's stops and interactions has not been fully developed yet and requires additional time to further build out intelligence profiles.

33.    Based on the facts outlined in this affidavit and previously in Exhibit 1 and the additional facts and information contained herein, I submit this affidavit in support of an application for an extension the tracking warrant, pursuant to Rule 41(e)(2)(C) and Title 18, United States Code, Section 3117, authorizing agents and task force officers of HSI to surreptitiously monitor, repair, replace and use a real-time Global Positioning System ("GPS") mobile tracking device for 45 days on TARGET VEHICLE 1 located in the District of New Hampshire for the purpose of monitoring and recording data regarding the movement of this motor vehicle both inside and outside the District of New Hampshire, and to remove the tracking device after the use of the tracking device has ended.

34.    Your Affiant knows as of April 17, 2025, based on the GPS tracking device that TARGET VEHICLE 1 is in the area of 100 Wellington Circle, Lebanon, NH 03766, and that TARGET VEHICLE 1 is presently within the District of New Hampshire.

## CONCLUSION

35.    Based on my training, experience, and conversations with other law enforcement officers, I have obtained relevant information pertaining to the use of motor vehicles in furtherance of criminal activity. Vehicles are often used by criminal to transport proceeds of their crimes and meet with coconspirators. Vehicles are also used to travel to locations being utilized to conduct criminal activity such as IMBs that offer commercial sex services. Individuals who are involved in the operation of IMBs use vehicles to arrange and coordinate criminal activities including using vehicles to meet with other coconspirators to arrange for transportation, coordinate with drivers or other transporters, and during counter surveillance activities, to warn other co-conspirators of the presence of law enforcement or other

obstacles to their illicit plans. Additionally, vehicles are used by facilitators of commercial sex services to provide transportation of the female workers from one IMB to another. The ability to track and document the activity of TARGET VEHICLE 1 will prove valuable to this investigation. Specifically, said information will assist law enforcement in identifying suspects, victims, locations and other methods being utilized by CHEN, ZHANG, and LI.

## <u>USE OF TRACKING DEVICE</u>

36.     In order to effectively track the movements of the TARGET VEHICLE 1, and to decrease the risk of detection, affiant seeks authorization to repair, replace, maintain and remove a tracking device on TARGET VEHICLE 1, while TARGET VEHICLE 1 is in the District of New Hampshire. Because agents have identified that TARGET VEHICLE 1 sometimes parks in driveways and on other private property, it may be necessary to enter onto private property and/or move TARGET VEHICLE 1 to affect the repair, replacement, and removal of the tracking device.  Agents have identified 100 Wellington Circle, Lebanon, NH as LI's residence, and a place where agents may likely repair, replace, maintain and remove the tracking device.  This location is a private property with a single-family home and driveway.  To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize the repair, replacement, maintenance and removal of the tracking device during both daytime and nighttime hours.  This request is based upon the precautionary measures employed by other subjects of this investigation to avoid detection, and the risk agents may be discovered attempting to repair, or replace the tracking device during daylight hours.

37.     Your affiant believes that an extension authorizing the tracking device placed in or on TARGET VEHICLE 1 will assist agents in identifying co-conspirators, victims, and locations in the Plattsburgh, NY, Burlington, VT, and Brooklyn, NY.  The tracking device on TARGET VEHICLE 1 will also assist agents in conducting surveillance of TARGET VEHICLE 1 in areas otherwise difficult to conduct physical surveillance. The requested tracking device will also assist agents in quickly locating TARGET VEHICLE 1 when agents believe it is being used in furtherance of violations of 18 U.S.C. § 1952(a) (Use of Facilities of Interstate Commerce to promote, manage, establish, carry on a commercial

sex enterprise) and related crimes. Without the use of the requested tracking device, agents may be required to conduct surveillance in a manner that may jeopardize this investigation.

38.     Should the Court grant this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-five (45) days following the issuance of the warrant.  The tracking device may produce signals from inside private garages, ranches or other such locations that are not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

39.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorized members of Homeland Security Investigations, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above described investigation, to repair, replace, maintain and remove the tracking device that was previously installed on TARGET VEHICLE 1 as necessary, and to remove the tracking device from TARGET VEHICLE 1 after the use of the tracking device has ended; to maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter 100 Wellington Circle, Lebanon, NH and/or move TARGET VEHICLE 1 to effect the repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire.

40.     In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 4l(t)(3), I further request that the warrant delay, notification of the execution of the warrant for 120 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. 'Providing immediate notice would seriously; jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

Respectfully submitted,

/s/ Simon Kramer
Simon Kramer
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone, on this 18th day of April 2025.

HONORABLE TALESHA SAINT-MARC
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

AO 102 (01/09)  Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Hampshire

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>White 2024 Ford Transit Van, New Hampshire<br>License Plate Number 5361892,<br>VIN # 1FBVU4X89RKA30763 | )<br>)<br>)<br>)    Case No.  25-mj-<br>)<br>) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __18__ U.S.C. § __1952(a)__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The activity in this district relates to domestic or international terrorism.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
100 Wellington Circle, Lebanon, NH 03766, and White 2024 Ford Transit Van, New Hampshire License Plate Number 5361892.

☑ Delayed notice of ____ days (give exact ending date if more than 30 days: __08/19/2025__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.       **Andrea K. Johnstone**

/s/ Simon Kramer
_____
*Applicant's signature*

Simon Kramer, Special Agent, HSI
_____
*Applicant's printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephonic means.
S̶w̶o̶r̶n̶ t̶o̶ b̶e̶f̶o̶r̶e̶ m̶e̶ a̶n̶d̶ s̶i̶g̶n̶e̶d̶ i̶n̶ m̶y̶ p̶r̶e̶s̶e̶n̶c̶e̶.

Date:  __Mar 7, 2025__

*Andrea K. Johnstone*
_____
*Judge's signature*

City and state:  __Concord, New Hampshire__              The Honorable Andrea K. ~~Simple~~  Johnstone
**U.S. Magistrate Judge**
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF WHITE 2024 FORD TRANSIT VAN, NEW HAMPSHIRE LICENSE PLATE NMVER 5361892, VIN # 1FBVU4X89RKA30763 | Case No. 25-mj-<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A TRACKING DEVICE
ON A VEHICLE PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 41 AND 18 U.S.C. § 3117**

I, Simon Kramer, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C § 3117 to authorize the installation and monitoring of a tracking device on a 2024 Ford Transit Van, White, Bearing New Hampshire License Plate Number 5361892, and VIN: 1FBVU4X89RKA30763 (hereafter "TARGET VEHICLE 1"). The TARGET VEHICLE 1 is registered to Can LI at 100 Wellington Circle, Lebanon, NH 03766. Based on the foregoing facts, I believe that the TARGET VEHICLE 1 is presently being used in furtherance of violations of 18 U.S.C. § 1952(a) (Use of Facilities of Interstate Commerce to promote, manage, establish, carry on a commercial sex enterprise), and that there is probable cause to believe that the installation and monitoring of a tracking device on the TARGET VEHICLE 1 will provide evidence, fruits, and instrumentalities of the aforementioned crimes as well as assist in the identification of persons who are engaged in the commission of those and related crimes.

2.      I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been a Special Agent with HSI since 2023, currently assigned to Rouses Point, NY. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), that is, an officer of the United States who is empowered

by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). As a U.S. Special Agent, your affiant is authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the use of Facilities of Interstate Commerce to promote, manage, establish, carry on a commercial sex enterprise, in violation of Title 18, United States Code, Section 1952(a).

3.      Your affiant has a Bachelor of Arts degree in the fields of Psychology and Criminal Justice from Rutgers, The State University of New Jersey in New Brunswick, NJ. Your affiant has completed approximately 960 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, encompassing both HSI Special Agent Training Program and Criminal Investigator Training Program. Your affiant has received training relating to the investigation of narcotics trafficking, firearms violations, money laundering, financial fraud, trafficking of counterfeit goods, human smuggling and trafficking, immigration and customs law, and other federal violations.

4.      Prior to your affiant's tenure as a Special Agent, your affiant has worked as a Federal Air Marshal for the Transportation Security Administration and a Federal Police Officer for the Pentagon Force Protection Agency. Part of your affiant's duties as a Federal Air Marshal included: enforce the statutes of Title 18 Criminal Law as well as Title 49 Transportation Law, participate in multi-agency operations to proactively combat terrorism and coordinate and administer law enforcement activities aboard US operated flights. As a Police Officer at Pentagon Force Protection Agency, your affiant's duties included: enforce the statutes of Title 18 Criminal Law as well as 32 CFR 234 Conduct on The Pentagon Reservation, operate as a Level 1 Civil Disturbance Officer; conduct Random Anti-Terrorism Measures; enforce local, state, and federal laws, as well as, DOD policy, procedures, and regulations; physically protect the grounds, personnel, visitors, and employee of the Pentagon Reservation; conduct access control screenings and contributed to protective services; and prepare reports for calls for service. Your affiant also has experience in conducting field interviews with both United States Citizens as well as suspected Foreign Nationals.

5.      The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show

merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

6.      Homeland Security Investigations (HSI) Rouses Point and HSI Burlington along with multiple federal, state, and local partners are investigating the activities of multiple Illicit Massage Businesses (IMBs) currently operating in the areas of Plattsburgh, NY, Colchester, VT, and Winooski, VT. In the course of this investigation, agents from HSI Rouses Point and HSI Burlington as well as task force officers, troopers, local police officers/detectives, and sheriff deputies have conducted suspect interviews, analyzed phone toll data, conducted vehicular and static surveillance, and conducted analysis of law enforcement records checks.

7.      On July 8, 2024, your affiant observed an advertisement on skipthegames.com for Tide Spa, located at 132 Irish Settlement Road B2, Plattsburgh, NY 12901. The advertisement was offering massage services and included images of Asian women in various stages of undress in sexually suggestive poses. Some of these descriptions in the advertisement described the masseuses as having breast sizes as "wow," "grooming down under" as "natural," piercings as "none," and tattoos as "none." The advertisement included descriptions such as, "we are cute and sexy Asian masseuses," "Asian beauties, private room," "we are sweet, warm, friendly, gentle, considerate, careful, and trustworthy," "soft skin, pretty face, natural perfect body."

8.      Initial surveillance of Tide Spa showed it is in Buckley's Plaza. Open-source record checks indicate that Tide Spa (NY DoS ID# 7282155) filed for incorporation on 03/18/2024 in Clinton County, NY with no owner or officers listed. Further open-source research identified Jing CHEN as the filer for Tide Spa.

9.      On July 24, 2024, your affiant received intelligence from law enforcement sources that Tide Spa Inc (Tide Spa) is one of at least three suspected IMBs in a network likely operated or facilitated by CHEN. Since July 10, 2024, your affiant has noted an increasing number of advertisements for Tide Spa. These advertisements have been posted on websites, such as Rubmaps.ch, AdultLook.com,

SkipTheGames.com, Escort Rush, and Xescort Hub. These websites are well known in the law enforcement community to advertise commercial sex/prostitution services.

10.     Open-source research previously associated the phone number (518) 310-9881 to Tide Spa. This same phone number ((518) 310-9881) is also listed on Rubmaps.ch in an advertisement for Yiren Spa LLC (Yiren Spa) located at 531 Main Street, Colchester, VT 05446. Rubmaps.ch is specifically a review site which caters to users looking for sexual services at IMBs. The Rubmaps.ch advertisement for Yiren Spa also lists another phone number, (929) 454-7763. This phone number is additionally associated with advertisements on skipthegames.com for Eva Spa 277 LLC (Eva Spa) located at 277 Pine Street, Suite B2, Burlington, VT 05401. The phone number (929) 454-7763 is included on several sexually suggestive advertisements on SkipTheGames.com for Eva Spa while also listing the address for Yiren Spa (531 Main Street, Colchester, VT 05446) in the same advertisement.

11.     Further investigation efforts revealed that CHEN also is the registered agent in corporate filings for both Yiren Spa and Eva Spa. Additionally, the email address, chenjing1989123@gmail.com, is used on corporate filings for both Eva Spa and Yiren Spa. It was revealed through law enforcement record checks that CHEN is associated with the address 277 Pine St Unit B2, Burlington, VT—the same address as Yiren Spa.

12.     Through surveillance efforts, HSI Rouses Point was able to observe CHEN's Black Mercedes SUV (NY #LCV4478) (TARGET VEHICLE 2) making trips from New York, NY to both Yiren Spa and Tide Spa. TARGET VEHICLE 2 has been observed via License Plate Reader (LPR) data driving north bound from New York, NY making frequent trips as well as at crossings between NY and VT. Additionally, TARGET VEHICLE 2 has been observed parked in front of Tide Spa and operated by a female identified as Juan ZHANG (DOB:          . CHEN sponsored ZHANG for her Lawful Permanent Resident Card utilizing a Spousal Visa.

13.     HSI Rouses Point has continued to analyze intelligence received regarding CHEN and their associated suspected IMBs including Tide Spa and Yiren Spa. HSI Rouses Point was able to identify an additional IMB, Mosong Spa LLC, which recent surveillance suggests that it is not yet currently

operational. Mosong Spa LLC was incorporated on April 25, 2024, by filings submitted to the Vermont Department of State by ZHANG.

14.     On September 15, 2024, at approximately 1907 hours, New York State Police (NYSP) Trooper Anthony Cumm encountered a woman working at Tide Spa (132 Irish Settlement Road, Unit B2, Plattsburgh, NY 12901). When Trooper Cumm asked if the female employee had ID on her; she replied, "I don't have, at home, my boss, my friends take…" The female employee then presented a picture of what appeared to be a United States Employment Authorization Card.

15.     During the encounter, NYSP Trooper Cumm was given consent to enter and look around Tide Spa. The following was observed from NYSP Trooper Cumm's body-worn camera:

a.  There was a front sitting room, a back room with a kitchenette, bathroom, and shower, and two massage rooms with doors on them.

b.  The first massage room had a large white male dressed only in black briefs (underwear), lying face down on a massage table. Additionally, there appeared to be a white in color small rectangular shaped bag/object on the ground that appeared to be tied up with a knot at one end, on top of a smaller round object that appeared to be in the shape of a ring. Additionally, there was ambient/dimmed lighting and a small table with what appeared to be plastic bottles.

c.  The other massage room appeared to have an empty massage table covered in what appeared to be a white and violet in color fabric in the center of the room. Additionally, there was ambient/dimmed lighting, and a small table with what appeared to be plastic bottles and a roll of paper towels on the table.

d.  In the back room, there appeared to be the following: a shower with towels hanging next to the shower, a bathroom, luggage, various paper products including paper towels, toilet paper, tissues, and garbage bags. Additionally, there appeared to be multiple pieces of furniture including dressers, a kitchenette with various small appliances, and other various kitchen items.

e.  In the front room by the front door, there appeared to be a couch with a blanket and multiple

pillows. The couch appeared to have a black and white striped sheet tucked in over the couch

seat cushions. That striped sheet appeared to be underneath the blanket and pillows on top.

16.    On September 17, 2024, HSI Burlington and the Colchester Police Department (Colchester

Police) conducted surveillance of Yiren Spa.  Colchester Police advised HSI that earlier in the day, a black

Mercedes was parked at Yiren Spa bearing New York license plate LCV4478 (TARGET VEHICLE 2).  An

unknown female was observed walking to and from TARGET VEHICLE 2 from inside of Yiren Spa,

moving what appeared to be luggage and other belongings to the trunk of TARGET VEHICLE 2 from

inside Yiren Spa.  Colchester Police noted that a male appeared to be driving TARGET VEHICLE 2 and

was identified as Kevin TOWNE.  Colchester Police advised they had previously observed TARGET

VEHICLE 2 at the spa on multiple occasions.

17.    On September 17, 2024, at approximately 17:30 hours, Colchester Police observed

TARGET VEHICLE 2 arrive at Yiren Spa.  Colchester Police reported that TOWNE was driving TARGET

VEHICLE 2 and ZHANG was in the passenger seat.  Another unknown woman was observed in the back

seat of TARGET VEHICLE 2. A suitcase was removed from the trunk of TARGET VEHICLE 2 before

the parties entered Yiren Spa.  TARGET VEHICLE 2 remained parked in front of the Yiren Spa.  At

approximately 19:18 hours, a white Ford Transit Van with a New Hampshire license plate (TARGET

VEHICLE 1) parked the driveway of Yiren Spa, the driver positioned TARGET VEHICLE 1 with the

headlights pointing down the driveway towards Main Street.  Investigators could see someone walking in

front of the headlights back and forth at least 2-3 times.  TARGET VEHICLE 1 remained in front of Yiren

Spa briefly until at least two occupants entered TARGET VEHICLE 1.  TARGET VEHICLE 1 left Yiren

Spa and was surveilled as it traveled west on Main St. towards Route 7.  The registration of TARGET

VEHICLE 1 is NH 5361892.  A law enforcement records check of a registration of NH 5361892 indicated

that the 2024 white Ford Transit Van (TARGET VEHICLE 1) is registered to Can LI, of 100 Wellington

Circle, Lebanon, NH.  TARGET VEHICLE 2 was also observed leaving Yiren Spa and following TARGET

VEHICLE 1 out of the driveway.  Investigators were able to continue to surveil TARGET VEHICLE 2 as

it traveled Southbound on I-89 to I-189, eventually reaching 106 East Redrock Drive in Burlington, VT. Investigators located TARGET VEHICLE 2 parked and unoccupied at this address in the driveway.

18.    On October 18, 2024, HSI Rouses Point conducted motor vehicle stops on subjects observed exiting Tide Spa. At approximately 14:45 hours a white male (the Subject) was seen parking at and then entering Tide Spa. HSI Rouses Point maintained surveillance on the Subject's vehicle. During surveillance, probable cause was observed by Clinton County Sheriff's Office (CCSO) Sergeant Deputy Rosoff to initiate a traffic stop. The Subject was identified as ▮▮▮▮▮▮▮.

a.    During the encounter, ▮▮▮▮ consented to an interview with HSI Rouses Point SA Strachan and stated, "I went to get a massage and then she asked me if I want a happy ending." ▮▮▮▮ elaborated that the Tide Spa employee indicated sexual services by "making gestures with her hand." ▮▮▮▮ replied to the Tide Spa employee, "Is that okay?" and the Tide Spa employee stated, "Yes."

b.    ▮▮▮▮ further claimed the Tide Spa employee spoke poor English. ▮▮▮▮ indicated that he heard about Tide Spa through a friend but did not remember which friend. Moreover, ▮▮▮▮ claimed that he sought massage services due to injuries and scheduled an appointment through skipthegames.com. ▮▮▮▮ claimed that he saw sexual services offered on skipthegames.com in addition to services for a "masseuse." When asked further about offering to get sexual services, ▮▮▮▮ claimed, "I didn't offer" and when asked again where he first heard about Tide Spa, ▮▮▮▮ claimed, "I forgot where I heard it" and "it was a long time ago." However, ▮▮▮▮ did claim the person mentioned skipthegames.com. When questioned further about skipthegames.com, ▮▮▮▮ indicated that you "type in what you want" and that the website specifically mentions "escort" and "exotic massage." ▮▮▮▮ claimed he went to Montreal "years ago" for a "Nuru Massage" where they "use their tits on you or something." When asked about his first time visiting Tide Spa, ▮▮▮▮ initially claimed that he thought he first visited in May.

c. Furthermore, ██████ provided a phone number of (518) 310-9881 for Tide Spa. ██████ claimed he had communicated with a Tide Spa employee via text messages and received a "heart emoji" from the phone number. ██████ claimed he would use a phone number to call or text message to schedule appointments at the spa. ██████ showed his text message exchange with Tide Spa to CCSO Sergeant Deputy Rosoff and SA Strachan. The text messages depicted a heart emoji, a picture of ██████ and messages requesting ██████ to return to Tide Spa. The first text with Tide Spa was on July 8, 2024.

d. Additionally, ██████ indicated that sometimes he would arrive at Tide Spa but was turned away by the employee claiming "she's busy" because somebody else is there. ██████ claimed a massage is 45 to 50 minutes and costs about $80 in cash and that cards aren't accepted. Upon first arriving at Tide Spa, ██████ would ring the doorbell, and an employee would bring him inside. ██████ described the interior as being "real dark" with "Chinese music playing" and "electric heaters going." ██████ further described the interior as having two small rooms to the right upon entry. Additionally, ██████ claimed "it looks like she lives there," due to the presence of a couch containing pillows and blankets, and a kitchen towards the rear containing a microwave and refrigerator.

e. ██████ indicated that he takes his clothes off and lays down for a 45-to-50-minute massage with oil. Towards the end of the massage, ██████ indicated that he was asked if he wanted a "happy ending." ██████ claimed that he asked how much but the employee did not understand him. ██████ claims he paid $140 USD total for the massage and "happy ending."

f. Additionally, ██████ first claimed that he had been to Tide Spa twice but later clarified "maybe three times." The Subject also stated that he has seen two Asian females in Tide Spa.

g. ██████ claimed that one of the female employees named "Emma" indicated that Tide Spa employees go back and forth between New York and Vermont and that females are swapped out every two weeks.

19.     On Tuesday, October 22, 2024, HSI Burlington and Colchester Police conducted joint surveillance of Yiren Spa.  At approximately 18:32 hours, Colchester Police reported that they observed who appeared to be ZHANG park TARGET VEHICLE 2 in the driveway of Yiren Spa and bring in items from TARGET VEHICLE 2's trunk into Yiren Spa.  At approximately 18:34 hours, investigators observed TARGET VEHICLE 1 park in the driveway of Yiren Spa.  ZHANG was observed putting items into the back of TARGET VEHICLE 1 and then a female exited Yiren Spa and entered TARGET VEHICLE 1.  TARGET VEHICLE 1 then left the area and headed towards I-89 Southbound.  At approximately 18:53 hours, TARGET VEHICLE 1 pulled into the McDonald's parking lot located at 1205 Williston Rd, South Burlington, VT.  An individual was observed getting into TARGET VEHICLE 1 at this location.  TARGET VEHICLE 1 then left the area and headed westbound on Williston Rd towards the interstate. After following TARGET VEHICLE 1, investigators observed TARGET VEHICLE 1 park at Cricket Wireless located at 1203 Williston Rd, South Burlington, VT and see two males get out and walk behind the Cricket Wireless.  Investigators surveilled TARGET VEHICLE 1 as it departed and traveled Southbound on I-89.

20.     Investigators continued to surveille TARGET VEHICLE 1 as it traveled Southbound on I-89 to Waterbury, VT. TARGET VEHICLE 1 exited the interstate via Exit 10 and began traveling towards the Town of Stowe, VT on Route 100 (Waterbury-Stowe Rd.).  TARGET VEHICLE 1 travelled a short distance from the exit and entered the parking lot of the Mobil Gas Station located at 758 Waterbury-Stowe Rd, Waterbury, VT.  TARGET VEHICLE 1 was observed pulling up to the gas pumps.  Investigators obtained and reviewed the video footage from the gas station and observed an unknown female waiting with luggage on the southern side of the main parking lot.  When TARGET VEHICLE 1 pulled up, the unknown female began walked towards TARGET VEHICLE 1 and loaded her luggage into the rear of TARGET VEHICLE 1.  The unknown female then entered TARGET VEHICLE 1 and waited while two males, one being the driver of TARGET VEHICLE 1, were outside walking around TARGET VEHICLE 1.  The driver of TARGET VEHICLE 1 walked into the gas station.  Surveillance footage from the interior of the gas station allowed investigators to identify the male driver of TARGET VEHICLE 1 as LI, the registered owner of TARGET VEHICLE 1.

21.    Investigators continued to follow TARGET VEHICLE 1 South on I-89.  TARGET VEHICLE 1 entered the State of New Hampshire and exited I-89 in New Hampshire at Exit 19, driving into Lebanon, NH.  TARGET VEHICLE 1 drove to a Maplefield's gas station located at 260 Mechanic St, Lebanon, NH.  TARGET VEHICLE 1 pulled up to the gas pumps at approximately 20:25 hours.  The occupants of TARGET VEHICLE 1 were observed exiting and standing around TARGET VEHICLE 1.  While TARGET VEHICLE 1 stopped at this Maplefield's, investigators observed two females exit TARGET VEHICLE 1 and enter the gas station for a brief period of time, before returning to TARGET VEHICLE 1.  Once all of the occupants returned, TARGET VEHICLE 1 drove back North on I-89 then continued Southbound on I-91.  At approximately 21:33 hours, TARGET VEHICLE 1 traveled past Exit 1 in Vermont and continued southbound into the State of Massachusetts.

22.    Analysis of License Plate Reader (LPR) data shows TARGET VEHICLE 1 making frequent trips to the New York City Metropolitan Area. The in-depth analysis showed that TARGET VEHICLE 1 was purchased by LI on approximately February 23, 2024. Based on LPR analysis, TARGET VEHICLE 1 began making trips southbound towards the New York City Metropolitan Area on February 28, 2024; approximately three weeks before Tide Spa and Yiren Spa opened for business. Further analysis shows trips to the New York City Metropolitan Area taking place every month; sometimes multiple times a month and, in some cases, multiple times a week. These trips to the New York City Metropolitan Area number are estimated to be 51 trips between February 28, 2024, and February 15, 2025. Based on the surveillance conducted on TARGET VEHICLE 1 previously referenced (Paragraphs 19-21) and from information gathered through enforcement actions of customers of Tide Spa previously referenced (Paragraph 18, Subsections a-g), it is suspected that LI is the primary transportation provider for the female employees. It is suspected that LI is explicitly using TARGET VEHICLE 1 to move the female employees between the Northern NY/VT areas and the New York City Metropolitan Area.

23.    On March 6, 2025, an investigator conducted surveillance 100 Wellington Circle, Lebanon, NH 03766 (the registered address of TARGET VEHICLE 1) and observed TARGET VEHICLE 1 in the driveway. Therefore, your Affiant knows as of March 6, 2025, based on surveillance of 100 Wellington

Circle, Lebanon, NH 03766, that TARGET VEHICLE 1 is presently within the District of New Hampshire and the tracking device can be installed within the ten (10) day window authorized for installation.

## CONCLUSION

24.     Based on my training, experience, and conversations with other law enforcement officers, I have obtained relevant information pertaining to the use of motor vehicles in furtherance of criminal activity. Vehicles are often used by criminal to transport proceeds of their crimes and meet with coconspirators. Vehicles are also used to travel to locations being utilized to conduct criminal activity such as IMBs that offer commercial sex services. Individuals who are involved in the operation of IMBs use vehicles to arrange and coordinate criminal activities including using vehicles to meet with other coconspirators to arrange for transportation, coordinate with drivers or other transporters, and during counter surveillance activities, to warn other co-conspirators of the presence of law enforcement or other obstacles to their illicit plans. Additionally, vehicles are used by facilitators of commercial sex services to provide transportation of the female workers from one IMB to another. The ability to track and document the activity of TARGET VEHICLE 1 will prove valuable to this investigation. Specifically, said information will assist law enforcement in identifying suspects, victims, locations and other methods being utilized by CHEN, ZHANG, and LI.

## USE OF TRACKING DEVICE

25.     In order to effectively track the movements of the TARGET VEHICLE 1, and to decrease the risk of detection, affiant seeks authorization to place a tracking device on TARGET VEHICLE 1, while TARGET VEHICLE 1 is in the District of New Hampshire. Because agents have identified that TARGET VEHICLE 1 sometimes parks in driveways and on other private property, it may be necessary to enter onto private property and/or move TARGET VEHICLE 1 to affect the installation, repair, replacement, and removal of the tracking device. Agents have identified 100 Wellington Circle, Lebanon, NH as LI's residence, and a place where agents may likely install/replace the tracking device. This location is a private property with a single-family home and driveway. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation,

maintenance, and removal of the tracking device during both daytime and nighttime hours.  This request is based upon the precautionary measures employed by other subjects of this investigation to avoid detection, and the risk agents may be discovered attempting to install, repair, or replace the tracking device during daylight hours.

26.     Your affiant believes that a tracking device placed in or on TARGET VEHICLE 1 will assist agents in identifying co-conspirators, victims, and locations in the Plattsburgh, NY, Burlington, VT, and Brooklyn, NY.  The tracking device on TARGET VEHICLE 1 will also assist agents in conducting surveillance of TARGET VEHICLE 1 in areas otherwise difficult to conduct physical surveillance. The requested tracking device will also assist agents in quickly locating TARGET VEHICLE 1 when agents believe it is being used in furtherance of violations of 18 U.S.C. § 1952(a) (Use of Facilities of Interstate Commerce to promote, manage, establish, carry on a commercial sex enterprise) and related crimes. Without the use of the requested tracking device, agents may be required to conduct surveillance in a manner that may jeopardize this investigation.

27.     Should the Court grant this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of forty-five (45) days following the installation of the device.  The tracking device may produce signals from inside private garages, ranches or other such locations that are not open to the public or visual surveillance.

**<u>AUTHORIZATION REQUEST</u>**

28.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorized members of Homeland Security Investigations, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above described investigation, to install a tracking device on TARGET VEHICLE 1 in the District of New Hampshire within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from TARGET VEHICLE 1 after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter

100 Wellington Circle, Lebanon, NH and/or move TARGET VEHICLE 1 to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire.

29.    In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 4l(t)(3), I further request that the warrant delay, notification of the execution of the warrant for 120 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. 'Providing immediate notice would seriously; jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

30.    I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of Homeland Security Investigations, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.  These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.  Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

/s/ Simon Kramer
 Simon Kramer, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone, on this 7th day of March 2025.

_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE